UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER PARIZON,

Plaintiff,    Case No.: _____

Hon.: _____

v.

OXFORD HOTELS AND RESORTS, LLC

Defendant.

_____/

**COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1. This is an action to enforce rights arising out of Plaintiff's employment relationship with Defendant, under Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq and 42 USC 2000e(5)(E)(3) (Title VII), the Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq., the Americans with Disabilities Act ("ADA"), 42 USC §§ 12101 et seq ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1201 et seq.;

2. Plaintiff, a male of Mexican and Hungarian descent, was discharged after complaining of a hostile work environment based on his race and national origin.

3. Persons of color at Defendant's workplace received different treatment from the same supervisor and general manager and were not subject to the same hostile work environment as was Plaintiff.

4. Plaintiff's general manager and supervisor engaged in repeated weight- and race- and disability- based comments, contributing to a hostile environment and evidencing discriminatory animus.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

6. Supplemental jurisdiction over the ELCRA and PWDCRA claims exists under 28 U.S.C. § 1367.

7. Venue is proper because the events occurred in Detroit, Michigan.

## PARTIES

8. Plaintiff Walter Parizon is a resident of Wayne County, Michigan.

9. Defendant Oxford Hotels and Resorts, LLC is a foreign limited liability corporation operating its business in Detroit, Michigan and is an employer under both Title VII and ELCRA. Defendant Oxford Hotels and Resorts, LLC operates and manages The Godfrey Hotel Detroit and was Plaintiff's employer. Plaintiff's EEOC charge identified "The Godfrey Hotel," the name under which Defendant conducts business and employs staff.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff filed a Charge of Discrimination with the EEOC and received a Notice permitting suit.

11. All administrative prerequisites have been satisfied and this action is being filed within 90 days of receipt of the Right to Sue letter.

## GENERAL ALLEGATIONS

12. Plaintiff is of Mexican and Hungarian descent.

13. Plaintiff began employment with Defendant in February, 2024, as a maintenance engineer.

14. Plaintiff performed his job duties well and never gave Defendant reason to discipline or terminate Plaintiff's job due to performance.

15. During his employment with Defendant, Plaintiff observed that Defendant, through its new general manager, Kevin Johnson, concentrated on hiring African American employees and explicitly excluded from employment other persons who were not African American.

16. Plaintiff has a condition of rheumatoid arthritis and a condition of obesity, both of which substantially impair one or more of Plaintiff's daily activities, and both of which qualify as disabilities under the ADA and the Michigan PWDCRA.

17. Plaintiff was still able to perform the essential functions of his job despite his disabilities.

18. On several occasions, GM Johnson asked Plaintiff, "why is your wife with you, you're fat?" and "Walter, you need to lose weight."

19. Plaintiff's direct supervisor also regularly made negative comments about Plaintiff's weight.

20. On one occasion, Johnson stated to Plaintiff, "ICE haven't got you yet?" in direct reference to Plaintiff's Mexican heritage.

21. On another occasion, Johnson stated to Plaintiff, "Hey, have you met the new engineer we hired to replace you? What are you going to do when I call ICE on you?" again in direct reference to Plaintiff's Mexican heritage.

22. On another occasion, Johnson told Plaintiff, "I'm going to deport you."

23. Plaintiff's supervisor told Plaintiff that he, the supervisor, had heard on more than one occasion GM Johnson say racially derogatory things about Plaintiff.

24. Plaintiff's supervisor and GM Johnson regularly declined Plaintiff's advance requests for leave time, but regularly granted the leave requests of African American co-employees of Plaintiff.

25. In or about May, 2025, Plaintiff complained to Defendant's corporate office about the disparate treatment he was receiving.

26. Within days of Plaintiff complaining, Plaintiff was written up for alleged "poor performance," which was undocumented and false.

4

27. Plaintiff was then accused of doing an act of misconduct, which accusation was false, and was sent home and thereafter terminated on or about June 8, 2025.

### Count I- Title VII, Hostile Work Environment and Termination, National Origin Discrimination

28. Plaintiff realleges all paragraphs above as though fully set forth herein.

29. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

30. Plaintiff's national origin was at least one factor that made a difference in Defendant's decision to create a hostile work environment based on national origin and treat Plaintiff differently and to terminate his employment.

31. Had Plaintiff been a person of different national origin he would not have been subjected to a hostile work environment, treated differently or terminated.

32. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of national origin and acted in accordance with that predisposition in creating a hostile work environment and treating Plaintiff differently and in terminating his employment.

33. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

34. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of wages and

benefits, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

### Count II –Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq - National Origin Discrimination

35. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

36. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

37. Plaintiff's national origin was at least one factor that made a difference in Defendant's decision to create a hostile work environment and treat Plaintiff differently and to terminate his employment.

38. Had Plaintiff been a person of different national origin he would not have been subjected to a hostile work environment and treated differently and terminated.

39. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of national origin and acted in accordance with that predisposition in creating a hostile work environment and in treating Plaintiff differently and in terminating his employment.

40. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

41. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of wages and benefits, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

### Count III: Title VII- Hostile Work Environment, Race and Color Discrimination and Termination

42. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

43. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII, 42 USC 2000e-2(a)(1).

44. Plaintiff's race and color were at least one factor that made a difference in Defendant's decision to create a hostile work environment and to treat Plaintiff differently and to terminate his employment.

45. Had Plaintiff been a person of different race or color he would not have been subjected to a hostile work environment, treated differently or terminated.

46. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race or color and acted in accordance with that predisposition in creating a hostile work environment and in treating Plaintiff differently and in terminating his employment.

47. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

48. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of wages and benefits, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

**Count IV –  Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq -
Hostile Work Environment, Race and Color Discrimination**

49. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

50. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

51. Plaintiff's race and color were at least one factor that made a difference in Defendant's decision to create a hostile work environment and to treat Plaintiff differently and to terminate his employment.

52. Had Plaintiff been a person of different race or color he would not have been subjected to a hostile work environment or treated differently or terminated.

53. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and color and acted in accordance with that predisposition in creating a hostile work environment and treating Plaintiff differently and in terminating his employment.

54. The actions of Defendant were intentional, willful, malicious, wanton, and in reckless disregard for Plaintiff's rights and sensibilities.

55. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of wages and benefits, humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

### COUNT V: Violation of the ADA

56. Plaintiff realleges paragraphs 1-55 above as though fully set forth herein.

57. Title I of the ADA prohibits employers from discriminating against an employee on the basis of disability, 42 U.S.C. § 12112(a), or "because the employer 'regards' the employee as disabled." 42 U.S.C. § 12102(1).

58. Because of Plaintiff's obesity and rheumatoid arthritis, Defendant regarded Plaintiff as being disabled and therefore unable to perform the essential functions of his job.

59. Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of his job with Defendant.

60. By Defendant discharging Plaintiff, Defendant violated Plaintiff's rights under the ADA.

61. Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

62. As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's conduct has caused and continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental, emotional and physical pain and anguish, loss of enjoyment of life, and other nonpecuniary losses.

### Count VI: Violation of PWDCRA

63. Plaintiff incorporates paragraphs 1-62 as though fully stated herein.
64. The PWDCRA prohibits employers from discharging or otherwise discriminating against an employee because they are regarded as having a determinable physical or mental characteristic from disease, injury, congenital condition of birth, or functional disorder, on the basis of disability; MCL 37.1202(b); MCL 37.1103(d)(iii).
65. Because of Plaintiff's obesity and rheumatoid arthritis, Defendant regarded Plaintiff as being disabled and therefore unable to perform the essential functions of his job.
66. Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of his job with Defendant.
67. By Defendant discharging Plaintiff, Defendant violated Plaintiff's rights under the PWDCRA.
68. Defendant conducted itself with malice or with reckless indifference to Plaintiff's federally protected rights.

69. As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's conduct has caused and continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental, emotional and physical pain and anguish, loss of enjoyment of life, and other nonpecuniary losses.

Respectfully submitted,

/s/ Jeffrey S. Burg

Dated: March 5, 2026

Jeffrey S. Burg
Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury of all appropriate claims as asserted in this Complaint.

Respectfully submitted,

/s/ Jeffrey S. Burg

Dated: March 5, 2026

Jeffrey S. Burg
Attorney for Plaintiff